FILED

2007 Oct-19  AM 11:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **LARRY E. FARLEY, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-06-BE-1864-W** |
| | ] | |
| **SAXON MORTGAGE CO., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |
| | ] | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on Defendant Homeowners Loan Corporation's ("HLC")

motion to dismiss Plaintiffs' RICO claim, or alternatively, for a more definite statement (doc.

92), and the motions to dismiss filed by Defendants Residential Funding Corporation ("RFC")

(doc. 94); Option One Mortgage Corporation ("Option One") (doc. 114);  Household Financial

Services, Inc. d/b/a HSBD Mortgage Services, Inc. ("HSBD") (doc. 119); Nationstar Mortgage,

LLC ("Nationstar"), successor to Centex Credit Corporation (doc. 128); Wachovia Mortgage

Corporation ("Wachovia") (doc. 130); Countrywide Home Loans, Inc. ("Countrywide") (doc.

134); Saxon Mortgage, Inc. ("Saxon") (doc. 137); and Citifinancial Mortgage Company

("Citifinancial") (doc. 163).[1]

For the reasons stated on the record at the hearing held October 12, 2007 and summarized

below, the court will grant the motions to dismiss filed by Option One, HSBD, Nationstar,

---

[1]In connection with these motions, Defendant HLC also filed a motion for leave to
supplement the other Defendants' consolidated reply brief (doc. 181).  HLC's supplemental brief
addressed only Plaintiffs' rescission claim.  Because the court concludes that the rescission claim
is more appropriately addressed at the class certification stage of this case, it need not consider
that claim at this time and, therefore, will deny HLC's motion for leave to supplement.

Wachovia, Countrywide, Saxon, and Citifinancial, and will dismiss all claims against those Defendants. Based upon Plaintiffs' counsel's oral representation at the hearing, the court will also grant RFC's motion to dismiss count IV of the second amended complaint. Finally, the court will grant in part and deny in part HLC's motion; specifically, the court will require Plaintiffs to file an amended RICO case statement by November 2, 2007.

## I. BACKGROUND

Plaintiffs Larry E. Farley and Glenda B. Farley obtained a mortgage loan from Defendant HLC in January 2006. HLC assigned the Farleys' loan to Defendant RFC. Plaintiffs Mark C. Seitz and Kristy Seitz obtained a mortgage loan from HLC in April 2005. The Seitzes initially alleged that HLC assigned their loan to Defendant Countrywide, but later stipulated that Countrywide was not the assignee of the Seitzes' loan. The Seitzes have not amended the complaint to identify the appropriate assignee.

Plaintiffs filed a putative class action complaint on September 18, 2006 against Saxon, HLC, RFC, and Laredo National Bank ("Laredo"), the majority owner of HLC. Plaintiffs subsequently amended the complaint, under which the defendants now include: HLC; RFC; Countrywide; Saxon; Laredo; Nationstar, Wachovia; Citifinancial; HSBD; Option One; Provident Consumer Financial Services, Inc. ("Provident"); and IXIS Real Estate Capital Inc. ("IXIS"). These defendants were all allegedly "purchasers and assignees" of loans originating with HLC -- but not the named Plaintiffs' loans -- and, in this memorandum opinion, will be referred to collectively as "Non-Holder Defendants."

The Farleys and the putative Farley class assert that their mortgages were subject to the Truth-in-Lending Act ("TILA"), the Home Owner Equity Protection Act ("HOEPA"), and the Real Estate Settlement Procedures Act ("RESPA"). The Seitzes and the putative Seitz class

assert that their mortgages were subject only to TILA and RESPA.  Each putative class includes

all persons that obtained mortgage loans originated with HLC.  Plaintiffs estimate the each class

includes over 20,000 members.

The essential allegations are that the Plaintiffs were assessed excessive, duplicative,

inflated, or marked-up charges for title abstracts, title searches, title examinations, and recording

services. All Plaintiffs contend that their mortgages should be closed "without omission of or

inaccurate required disclosures, without charges being imposed for services not performed,

without charges that were duplicative as a matter of law, without charges in excess of the actual

charges incurred by HLC and without illegal fee splitting."  Plaintiffs allege that the "amount

financed" was inaccurately disclosed in their transactions, the specific disclosures required by

HOEPA were not timely made, and illegal and excessive fees were charged in violation of

RESPA.  Based upon the alleged statutory violations, Plaintiffs also claim that Defendants are

liable under the Racketeering Influenced and Corrupt Organizations Act ("RICO").

Option One, HSBD, Nationstar, Wachovia, Countrywide, Saxon, and Citifinancial each

moved to dismiss Plaintiffs' second amended complaint for lack of standing.  None of these

Defendants holds or has ever held the named Plaintiffs' loans.  In addition, each moved to

dismiss the RICO cause of action for failure to state claim.  RFC moved to dismiss only the

RICO count for failure to state a claim.  HLC moved to dismiss the RICO cause of action, or,

alternatively, for a more definite statement on the same grounds.  Several Defendants also argued

that the rescission cause of action cannot be brought in a class action because it is a personal

claim.[2]

---

[2] The court concludes that the rescission claim is more appropriately addressed at the
class certification stage of this case, and will not discuss it further in this memorandum opinion.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.  "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Id.* at 1965.  The standard is one of "plausible grounds to infer;" that is, the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  *Id.*

When a defendant facially challenges a plaintiff's standing in a motion to dismiss, the court likewise must look only to the plaintiff's pleadings; the plaintiff bears the burden of proving standing.  *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).[3]  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

---

[3] Although some moving Non-Holder Defendants submitted affidavits and characterize their argument as a "factual" attack, the court need not look beyond Plaintiffs' pleadings to resolve the issue.  In addition, Plaintiffs' counsel readily admitted at the hearing that the named Plaintiffs have no connection with the Non-Holder Defendants.

In evaluating a motion to dismiss, including one based on a facial attack to subject matter jurisdiction, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests. To succeed on a motion under Rule 12(b)(1), a defendant must demonstrate that the plaintiff failed to allege an element necessary for subject matter jurisdiction. *Crayton v. Callhan*, 120 F.3d 1217, 1220 (11th Cir. 1997).

### III. RICO ALLEGATIONS

#### A.    Against the Non-Holder Defendants and RFC

At the hearing held on October 12, 2007, Plaintiffs' counsel conceded that Plaintiffs' second amended complaint failed to sufficiently plead a cause of action under RICO against the Non-Holder Defendants and RFC. This court agrees. Consequently, the court will dismiss count IV of the second amended complaint against all moving Non-Holder Defendants and RFC.

#### B.    Against HLC

HLC moved to dismiss or, alternatively, for a more definite statement on Plaintiffs' RICO claim against it in count IV. HLC bases its motion primarily on several inconsistencies between the RICO case statement and the second amended complaint, as well as inconsistencies within each document. HLC argues that neither the RICO case statement nor the second amended complaint provided HLC with sufficient information regarding, for instance, its alleged role in the alleged RICO "enterprise" or the specific fraudulent statements in the alleged predicate acts of mail and wire fraud.

This court agrees.  Although Plaintiffs specifically identified more than a dozen mail and wire transactions by date, they failed to clearly identify the alleged fraudulent statement or non-disclosure in each transaction.  Such allegations are insufficient to inform HLC of the grounds upon which Plaintiffs' RICO claim rests.

The court will give Plaintiffs one final chance to sufficiently plead a cause of action under RICO against HLC.  Accordingly, the court will order the Plaintiffs to file an amended RICO case statement, in which they must respond with appropriate detail to each relevant instruction, including, for the alleged predicate acts of mail and wire fraud, "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

## IV.  STANDING TO BRING CLAIMS AGAINST NON-HOLDER DEFENDANTS

The Non-Holder Defendants moved to dismiss all claims, arguing that the named Plaintiffs lack standing to bring an action on behalf of themselves or on behalf of an unnamed class.  Specifically, the movants argue that none of the Non-Holder Defendants is an assignee or purchaser of the named Plaintiffs' loans, and, therefore, the named Plaintiffs' injuries are not traceable to the Non-Holder Defendants' conduct.  Neither Plaintiffs' second amended complaint nor the RICO case statement alleged otherwise.  At the hearing held on October 12, 2007, Plaintiffs' counsel admitted that the Non-Holder Defendants have no connection to the named Plaintiffs' loans with HLC.

To satisfy Article III standing requirements, a plaintiff must show (1) an injury-in-fact, (2) "fairly traceable" to the defendant's alleged action, and (3) redressable by the judicial process.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Thus, standing, at its most

fundamental level, requires a plaintiff at least to state "general factual allegations of injury

resulting from the defendant's conduct."  *Bischoff*, 222 F.3d at 878.  "That a suit may be class

action . . . adds nothing to the question of standing, for even named plaintiffs who represent the

class 'must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they purport

to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *see also*

*Franze v. Equitable Assurance*, 296 F.3d 1250, 1253-54 (11th Cir. 2002) (holding that, without

individual standing to raise a legal claim against a specific defendant, a named representative

may not raise the claim on behalf of a class); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d

1331, 1339 n.6 (11th Cir. 2000) ("The fact that this suit was brought as a class action does not

affect the plaintiffs' burden of showing that they individually satisfy the constitutional

requirements of standing."), *citing Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987)

("[A] plaintiff cannot include class action allegations in a complaint and expect to be relieved of

personally meeting the requirements of constitutional standing, 'even if the persons described in

the class definition would have standing themselves to sue.'") (citation omitted).

    Plaintiffs attempt to get around this traditional notion of standing by invoking the

juridical link doctrine, which they argue the Eleventh Circuit Court of Appeals recognized in

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990).[4]  The juridical link doctrine arose

from *dicta* in a 1973 decision of the Ninth Circuit Court of Appeals, *La Mar v. H&B Novelty &*

---

    [4] In their opposition to the Non-Holder Defendants' motions to dismiss, Plaintiffs also
argued that their conspiracy allegations would confer standing or, alternatively, would weigh in
favor of allowing some discovery prior to addressing standing.  Because Plaintiffs' only
conspiracy allegations were within their RICO cause of action, which they have now abandoned
as to the Non-Holder Defendants, the court will not address these arguments.

*Loan Co.*, 489 F.2d 461 (9th Cir. 1973).  A juridical link is "a 'legal relationship' which sufficiently relates all the defendants so that a single action is preferable." *Turpeau v. Fid. Fin. Servs., Inc.*, 936 F. Supp. 975, 978 (N.D. Ga. 1996), *aff'd*, 112 F.3d 1173 (11th Cir. 1997).

Although the Eleventh Circuit Court of Appeals, in *Moore*, described the juridical link doctrine, it did not <u>apply</u> it.  In fact, the Court of Appeals did not address <u>standing</u> at all.  *See Christensen v. Beneficial Nat'l Bank*, 972 F. Supp. 681, 683 n.2 (S.D. Ga. 1997) (recognizing that "the Court in *Moore* never addressed the issue of standing because the holding was based on the application of a procedural rule"); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 687 (N.D. Ga. 2003) ("The Eleventh Circuit discussed the juridical link doctrine [relating to standing], but did not expressly rule on that doctrine.").

Rather, in *Moore*, the Court of Appeals reviewed the district court's *sua sponte* joinder as defendants, under Fed. R. Civ. P. 20, the secondary market purchasers of a bank's loans secured by real property in Georgia, even though the named plaintiffs had dealt only with the bank and none of the joined institutions.  Rule 20 permissive joinder, of course, "is distinct from a grant of jurisdiction and . . . cannot be used to expand the jurisdiction of the federal courts." *Christensen*, 972 F. Supp. at 683 n.2; *see* Fed. R. Civ. P. 82; *Dash v. FirstPlus Home Loan Owner Trust 1996-2*, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) (observing that *Moore* did not address standing and "Plaintiffs cannot use joinder rules to cure their lack of standing"); *Williams v. FirstPlus Home Loan Trust 1996-2*, 209 F.R.D. 404, 415 (W.D. Tenn. 2002) (same); *see also Easter v. Am. W. Financial*, 381 F.3d 948, 963 (9th Cir. 2004) (holding that Rule 20 "do[es] not create standing in a plaintiff who otherwise lacks it").

Even if, as Plaintiffs contend, the Court of Appeals endorsed the juridical link doctrine as a standing doctrine in *Moore*, the Court also described its limitations: "each of them [*i.e.*, the

-8-

cases plaintiffs cited in support of standing by juridical link] presents a situation in which there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants." *Moore*, 908 F.2d at 838.  In fact, the cases Plaintiffs cite in support of the same argument before this court fall within these narrow factual circumstances, and, therefore, are easily distinguishable from this case. *See Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) (finding that nineteen county defendants were juridically linked where they engaged in a common practice <u>authorized by Illinois law</u>); *Hudson v. City of Chicago*, 242 F.R.D. 496 (N.D. Ill. 2007) (finding Chicago police department defendants were juridically linked because they inappropriately used a particular <u>city ordinance</u> against panhandlers); *Pass v. City of Columbus*, 2006 WL 642492 (S.D. Ohio Mar. 9, 2006) (concluding that defendants were juridically linked where they all participated in a <u>city</u> Check Resolution Program).

Plaintiffs argue that TILA's and HOEPA's express statutory liability for assignees, in essence, equates to a "contractual obligation" adequate to juridically link the Non-Holder Defendants.  TILA and HOEPA, however, only link each assignee to HLC – not all assignees to one another, as in the juridical link cases discussed above.  Plaintiffs' counsel admitted during the hearing that no court within this circuit has made such a huge leap from *Moore*; this court will not be the first.  Likewise, courts in other circuits have refused to apply the juridical link doctrine in analogous circumstances. *See, e.g.*, *Landmann v. Bann-Cor*, 2004 WL 1944789, at *3-4 (S.D. Ill. Feb. 26, 2004); *Dash*, 248 F. Supp. 2d at 504-05; *Mull v. Alliance Mortgage Banking Corp.*,  219 F. Supp. 2d 895, 909 (W.D. Tenn. 2002) ("*Moore* does not support plaintiffs' position that defendants are juridically linked when plaintiffs' loans are originated by a common lender and subsequently assigned to unrelated defendants"); *Berry v. GMAC-Residential Funding Corp.*, 2002 WL 1797779, at *9 (W.D. Tenn. 2002) (same).

-9-

In the light of these difficulties with standing, Plaintiffs would have the court defer ruling on standing until it addresses class certification.  Plaintiffs rely upon the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), to argue that "standing analysis must sometimes be secondary to the determination of class certification."  Recognizing that "[o]rdinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits," the Supreme Court in *Ortiz* nonetheless held that some certification issues are "logically antecedent" to standing analysis.  527 U.S. at 831 (citing *Amchem Prod., Inc. v. Windsor*, 521 US. 591, 612 (1997)).

Both *Ortiz* and *Amchem*, the case upon which it relied, were asbestos liability cases, in which one party argued that class claims of "exposure-only" class members (*i.e.*, those who had not yet suffered illness from asbestos exposure) were nonjusticiable because those class members suffered no injury in fact.  *See Ortiz*, 527 U.S. at 830-31; *Amchem*, 521 U.S. at 612-13.  The named plaintiffs themselves had suffered illness and, therefore, unquestionably had standing. Consequently, the standing issue only arose <u>if</u> the class were certified, and, accordingly, the district court chose to address class certification first.  *Ortiz* was a "mandatory" class action under Rule 23(b)(1); unnamed plaintiffs did not have a guaranteed right to opt-out.  *Ortiz*, 527 U.S. at 834 n.13.

Here, on the other hand, the standing problem <u>does not</u> depend upon the class certification.  Rather, the non-holder Defendants argue that the court lacks jurisdiction <u>now</u> because the <u>named Plaintiffs</u> do not have standing against the Non-Holder Defendants.  In such circumstances, "it is well-settled that prior to the certification of a class, . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, at 1279-80 (11th Cir.

2000), *quoting Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987) (emphasizing that "any analysis of class certification must begin with the issue of standing"); *see also Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (remanding to district court to determine whether at least one named plaintiff had Article III standing prior to class certification).

Regardless, assuming this court were to certify Plaintiffs as a class, certification would not cure the <u>named Plaintiffs'</u> lack of standing against any Defendant who did not actually hold their loans.  Moreover, naming each Non-Holder Defendant because it may hold the loan of a hypothetical unnamed class member is, at this point, impractical and uncertain because that hypothetical class member could opt-out.

Because *Ortiz* is the exception, not the rule, the court will not defer consideration of the named Plaintiffs' standing against the Non-Holder Defendants at this time.  For the reasons stated above, the court concludes that the named Plaintiffs do not have standing to bring their claims against the Non-Holder Defendants.  Accordingly, the court will dismiss all claims against the Non-Holder Defendants.

## V.  CONCLUSION

Because the Plaintiffs concede that they have failed to sufficiently plead a cause of action under RICO against any of the "assignee" Defendants, the court will dismiss that claim against RFC and all moving Non-Holder Defendants.  For the reasons stated above and at the hearing held on October 12, 2007, the court will deny HLC's motion to dismiss, but grant HLC's alternative motion for a more definite statement as to the RICO count.  The court will also grant the moving Non-Holder Defendants' motions to dismiss because the court concludes that the named Plaintiffs lack standing against those Defendants.   The court will enter a separate order consistent with this memorandum opinion.

DATED this 19th day of October, 2007.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE