FILED
2011 Mar-04 AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| LARRY E. FARLEY; GLENDA B. FARLEY; MARK C. SEITZ; and KRISTY SEITZ; Individually and on behalf of all similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC., RESIDENTIAL FUNDING CORPORATION; HOMEOWNERS LOAN CORPORATION; et. al.,<br><br>    Defendants. | CV-06-BE-1864 |

## MEMORANDUM OPINION

On May 2, 2008, this court entered a "Final Order and Judgment" in this class action, approving the class action settlement and retaining jurisdiction over the implementation and enforcement of the settlement. (Doc. 211). This matter now comes before the court on "Motion for Clarification and/or Enforcement of Settlement Agreement" (doc. 216), filed by Charlene and Harry Bennett and Michael and Lois Chapman, who are absent members of the Plaintiff Class. Defendant Homeowners Loan Corporation ("HLC") responded (doc. 220), and Plaintiff replied (doc. 221); this matter has been fully briefed. The court held a hearing on this motion on February 11, 2011. For the reasons stated at the hearing and summarized in this opinion, the court finds that the motion for clarification is due to be GRANTED; and that the Settlement Agreement and release (doc. 202-1) and the court's "Final Approval Order and Judgment" (doc.

211) were not intended to and do *not* bar the claims now pending against HLC in the cases of *Bennett v. Homeowners Loan Corp., et. al,* No. 09-C-71 in the Circuit Court of Kanawha County, West Virginia, and *Chapman v. Homeowners Loan Corp, et. al.,* No. 1:10-CV-31 in the United States District Court for the Northern District of West Virginia.

HLC asserts that the *Farley* Settlement Agreement acts as a bar to the claims asserted in the *Bennett* and *Chapman* suits. The Bennetts and Chapman disagree about the effect of the *Farley* Settlement Agreement, but do not dispute that they participated in that settlement. In its "Final Approval Order and Judgment," this court expressly "reserve[d] and maintain[ed] continuing jurisdiction over all Members of the Settlement Class and matters relating to the settlement or the consummation of the settlement or the interpretation of the settlement; the validity of the settlement; the construction and enforcement of the settlement and any orders entered pursuant thereto. . . ." (Doc. 211, at 32). Therefore, the Bennetts and Chapmans properly brought to this court the issues raised about the effect and construction of the *Farley* settlement. At the hearing on February 11, 2011, the court exercised that continuing jurisdiction and addressed those issues: specifically, whether the release language in the *Farley* Settlement Agreement encompasses claims such as those asserted in the *Bennett* and *Chapman* suits, and if it does, whether such a bar complies with due process.

The Settlement Agreement in *Farley* contained, among other provisions, the following language:

> "Released Claims" means and includes any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, lawsuits, liens, costs, losses, expenses or liabilities of any kind whatsoever, for any relief whatsoever, including monetary, injunctive, or declaratory relief, or for reimbursement of attorneys' fees, costs or expenses, whether known or

>unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or vested, which the Representative Plaintiffs or any Member of the Class has had, now has, or may have in the future, against any Released Person, *which were or could have been raised in the Litigation and* which arise out of or related in any way with alleged representations, misrepresentations, disclosures, incorrect disclosures, failures to disclose, acts (legal or illegal), omissions, failures to act, deceptions, acts of unconscionability, acts of illegality, unfair business practices, breaches of contract, usury, unfulfilled promises, breaches of warranty or fiduciary duty, conspiracy, excessive fees collected, or violations of any consumer protection statute, any state unfair trade practice statute, or any other body of case or statutory law or regulation, federal or state, including but not limited to [various acts listed]. Notwithstanding the foregoing, this Agreement will not alter, amend, or change the terms and conditions of any mortgage loan to which a Class Member is or was a party. The Released Claims are limited to claims related to loans made by HLC or related to conduct by HLC.

(Doc. 202-1) (emphasis added). To determine whether the claims now asserted in separate suits by the Bennetts and the Chapmans "were or could have been raised" in the *Farley* litigation, the court must examine the claims involved in *Farley* and compare those asserted by these absent class members.

The claims raised in the *Farley* class action litigation involved inflated, duplicative, and illegal fees and charges in the *closing* of Plaintiffs' mortgage transactions. (2nd Am. Compl., doc. 84). For example, under the section entitled "Plaintiffs' Transactions," the Second Amended Complaint stated "Plaintiffs and the members of the Seitz and Farley Classes described below were entitled to have their federally related mortgage transactions closed, *inter alia*, without omission of or inaccurate required disclosures, without charges being imposed for services not performed, without charges that were duplicative as a matter of law, without charges in excess of the actual charges incurred by HLC and without illegal fee splitting." (Doc. 84, at 7, ¶ 20). Subsequent paragraphs referred specifically to inflated "charges for title abstracts,

searches and/or title examinations (¶ 21), inflated "charges for recording" (¶ 22), and inflated "amounts charged for title insurance" "endorsement fees" and "all closing fees (other than those just itemized"(¶ 23). While various paragraphs referred to HLC's "predatory lending scheme" (*see, e.g.,* ¶¶ 28, 33, 67, 69) and false, fraudulent, and incorrect representations (*see, e.g.,* ¶¶ 28, 29, 46, 49, 52, 71 ) and concealment (*see, e.g.,* ¶ 29), these references were in the context of the *closing* of the mortgage loans.  The only specific factual allegations focus on inflated settlement fees and charges *at closing*.  The Second Amended Complaint makes no specific reference to fraud in the origination of the mortgage loan or the unconscionability of the underlying loan contracts.

Rule 23 prerequisites for class actions include the requirement of Rule 23(a)(2) that "there are questions of law or fact common to the class," which questions must predominate over any questions affecting only individual class members.  Fed. R. Civ. P. 23.   In light of Rule 23 prerequisites, the court would have excluded from the *Farley* class litigation any individualized fraud claims regarding the origination of the mortgage loan or the unconscionability of the underlying mortgage loan contracts, such as those now asserted in the *Bennett* and *Chapman* suits, because such individualized claims would have defeated class certification.

The court also notes that the Class Notice sent to *Farley* class members describes the claims asserted in the *Farley* litigation as "claims *in connection with certain settlement charges* related to mortgage loans closed with HLC ..., including the failure to disclose certain fees as finance charges." (Doc. 202-2, at 52) (emphasis added).  The described claims, and those contained in the *Farley* complaint, addressed the legality of fees imposed on class members at loan closings.  In contrast, the claims now asserted by the Bennetts and Chapmans involve

4

primarily allegations of misrepresentation and misconduct in the inception of the loan contracts to induce those plaintiffs to enter into those contracts.

The claims raised in the *Bennett* suit against HLC are: Count VII - HLC "failed to follow commercially acceptable business practices in the origination of the allegedly unconscionable loan" contract and "unconscionably induced Plaintiffs to enter into the loan by (a) relying on an inflated valuation of the home [.... and] (b) altering the loan documents after they were signed by Plaintiffs and notarized;" Count VIII - HLC committed fraud by recklessly or intentionally misrepresenting the value of Plaintiffs home and suppressing from the Plaintiffs that it was not following commercially acceptable loan origination practices; Count X - Slander on Title based on HLC's alleged illegal alteration of the Deed of Trust used as security for the loan; Count XI - HLC and other defendants participated in a joint venture to pursue the acts specified in other counts.   These claims were not brought in the *Farley* class action nor would the court have allowed them to be included in that litigation if presented.

The claims raised in the *Chapman* suit against HLC are: Count I - the alleged unconscionable nature of the loan contract and/or its terms because HLC's alleged false promises induced the Chapmans to enter into the contract and because of the contract's inclusion of an illegal prepayment penalty and an exploding adjustable rate of interest; Count II - the illegality of the prepayment penalty in violation of West Virginia Code section 46A-3-110.  These claims were not brought in the *Farley* action nor would the court have allowed them to be included in that litigation if presented.

The Farley Settlement Agreement limited the "Released Claims" to those "which were or could have been raised in the Litigation. . . ." Because the claims asserted in the *Bennett* and

*Chapman* suits were not raised and could not have been raised in the *Farley* litigation, those claims do *not* fall within that clause.  Although those claims may well fall under one or more categories of matters listed *after* the clause in question, that clause is followed by the conjunction "and."  Thus, to be released, claims must first fall within the "which were or could have been raised in the Litigation" clause; if they do not fall within that clause, they are not released even if they do fall within the language following the "and" conjunction.   Because the claims in the *Bennett* and *Chapman* suits do not fall within that clause – i.e., they were not and could not have been litigated in that case – they do not fall within the "Released Claims" as defined by the *Farley* Settlement Agreement.

HLC relies on the Eleventh Circuit case of *Thomas v. Blue Cross & Blue Shield Assn.* as dictating a different interpretation of the release language.   594 F.3d 814 (11th Cir. 2010).   In *Thomas*, the Court of Appeals barred subsequent claims based upon release language that HLC claims is analogous to the release language addressed here. However,  the court finds that case to be distinguishable based on many factors, including the fact that the *Thomas* release language speaks of claims that "were or could have been brought" but does not include the critical limiting phrase "*in this Litigation*."  *See id.* at 817.

The court specifically finds that the "Released Claims" language in the *Farley* Settlement Agreement and upon which this court's "Final Approval Order and Judgment" was based, does *not* encompass and release the claims asserted against HLC in the *Bennett* and *Chapman* suits, because the claims asserted in the *Bennett* and *Chapman* suits were not raised in the *Farley* litigation and could not have been raised in that litigation.

The court recognizes that this finding regarding the effect of the Farley Settlement

Agreement conflicts with that of the federal district court in the *Chapman* case in its April 23, 2010 Order addressing HLC's motion to dismiss. *See* Doc. 220, Ex. A. However, the finding in the *Chapman* case is not a final judgment and is not binding on this court. Further, the federal court in the *Chapman* case "recognize[d] that the District Court of the Northern District of Alabama retained continuing jurisdiction over the interpretation of the Settlement Agreement in the Farley Litigation, and that the present question of interpretation would have been raised more properly before the court." Doc. 220, Ex. A, at 11 n. 1. This court agrees, and now that the Bennetts and Chapmans have brought the matter to this court to exercise its continuing jurisdiction, this issue can be laid to rest.

Although HLC focuses its arguments on the language of the Settlement Agreement as opposed to the doctrine of claim preclusion, the court further finds that the doctrine of claim preclusion does not bar the claims brought in the *Bennett* and *Chapman* suits. Specifically, the court finds that one of the elements of claim preclusion – identity of causes of action – is not met; the claims in *Bennett* or *Chapman* do not "ar[i]se from the same nucleus of operative fact" as those in *Farley*. *See Shurick v. The Boeing Co.*, 623 F.3d 1114, 1117 (11th Cir. 2010) (approving that test to determine whether "claims involved the same cause of action").

Finally, the court finds that *if* it were to accept HLC's interpretation of the Settlement Agreement's "Released Claims" – and the court does not – then the Notice sent out to the class did not comply with due process. *IF* the court were to accept HLC's interpretation and release claims such as those asserted by the *Bennetts* and *Chapmans*, the Notice language was insufficient to place class members on notice that they were in fact releasing such claims that differed substantially from those described as being litigated in the *Farley* class action. Indeed,

after reading all the settlement documents, including the Settlement Agreement and Notice, the court itself did not and still does not understand that such claims would be released. Although HLC correctly points out that the Notice stated that it was a summary and referred potential class members to the Settlement Agreement for more details, the Notice must nonetheless "contain an adequate description of the proceedings" and "information reasonably necessary" to allow class members to make the decision whether to opt out of the class. *See Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1227 (11th Cir. 1998) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1103-05 (5th Cir. 1977)). *To the extent* that the Settlement Agreement released claims such as those asserted in the *Bennett* and *Chapman* suits, the Notice did not contain an adequate description of the released claims or information reasonably necessary for them to make an informed decision to opt out.

Let the court be clear: it found in 2008 and still finds today that the Notice afforded to class members in the *Farley* litigation complies with due process. However, that finding is based on *its* interpretation of the Settlement Agreement language, i.e., that the Settlement Agreement only releases claims that were or could have been brought in the *Farley* litigation.[1]

For the reasons stated in the hearing on this matter and summarized above, the court finds that the motion for clarification is due to be granted, that the Settlement Agreement in *Farley* does not release the claims asserted in the *Bennett* and *Chapman* suits, and further, that the

---

[1] This interpretation coincides with the understanding of the parties, including Defendant HLC, as represented in HLC's motion for final approval of the settlement and supporting brief. Urging the court to approve the settlement, HLC stated: "While the release is broad, the broad and substantial relief afforded by this settlement would not be a available if it did not effect a final and complete resolution of any claim of Class Members *relating in any way to the imposition, calculation and collection of fees and charges relating to insurance, documents or documentation*." (Doc. 210, at 18) (emphasis added).

*Farley* litigation does not bar the claims asserted in the *Bennett* and *Chapman* suits via the doctrine of claim preclusion.

    DONE and ORDERED this 4th day of March, 2011.

                                          /s/ Karon O. Bowdre
                                          KARON OWEN BOWDRE
                                          UNITED STATES DISTRICT JUDGE